Davis, J.,
delivered the opinion of the court:
The case of the Hope was presented to the commission constituted pursuant to the provisions of article 9 of the treaty of 1819 with Spain, and was by that body rejected upon the merits (Spanish Com., vol. 23). It- is now contended by the defendants that the claim is not within our jurisdiction, being res judicata.
The Hope was taken into San Domingo and there condemned by what was entitled in the decree the “French tribunal of provisional captures established at San Domingo, M. Thomas Pons, judge of the provincial tribunal for captures, established at San Domingo.”
As to claims of the class within which falls the case at bar, the commission said:
“As to the claims supposed to be comprehended within the second renunciation of the ninth article of the treaty, the undersigned have to state that the construction given by the commission to that renunciation has not confined it to cases denoted by the mere terms therein used. These would include none other than condemnations by ‘French consuls within the territory and jurisdiction of Spain,’ here introduced as merely descriptive of the persons who for the most part exercised the French prize jurisdiction in foreign states, where it is to be suffered at any time to be exercised, and not as intended to confine the claims here provided, to condemnations *127 by sucli officers only. It- has been rcgafded rather as an example than as a limitation; and therefore the commission has received and allowed many claims founded upon condemnations in the territory of Spain uttered by other French agents than the denominated “ consuls,” believing that the injury designed to be here provided for was that which was produced by the act of Spain in suffering French jurisdiction to be exercised within her territory, no matter by what appellation this jurisdiction might be designated.
“ So, too, the terms ‘ territory and jurisdiction of Spain,’ according to a strict interpretation of them, might possibly be confined to places appertaining to Spain absolutely. But the board has considered itself at liberty to regard these terms as intended to be understood in a different sense; and, construing them as meaning to declare the liability of Spain for all condemnations by French tribunals, suffered to exert authority within the limits of the country subject at that time to her power, the board has not .hesitated to receive and allow all claims for such condemnation uttered in the city of Santo Domingo prior to tlie year 1801, for although by a treaty concluded between France and Spain many years antecedent to this period the Spanish part of the island of Hispaniola was ceded by Spain to France, yet until January, 1801, the possession of this territory was never surrendered to France in pursuance of that treaty; but the Spanish power and authority continued to be exerted there as before.”
It should be noted that the commission rejected claims for loss arising from “captures made by French privateers where the prizes were carried within the territory and jurisdiction of Spain, and although not considered by any tribunal then existing, were, nevertheless, there disposed of by the captors.”
These decisions turned upon the phraseology of paragraph 2 of article 9 of the treaty of 1819 with Spain, which extends to “ all claims on account of prizes made by French privateers and condemned by French consuls within the territory and jurisdiction of Spain.” We agree that San Domingo, when the Hope was there condemned, was within “the territory and jurisdiction of Spain,” and we also agree that the phrase “ French consuls ” should, as stated by the commissioners, be held to include a French authority exercising the power usually there exercised by a French consul. This case, therefore, was within the jurisdiction of the commission, and plaintiffs had a remedy there which they unsuccessfully invoked.
The parties before the commissioners were the same as here, the subject-matter was the same, and when the commission *128 ruled adversely upon tbe merits of tbe case it became res ju-dicata, and can not be revived unless Congress bas in tbe act of 1885 given tbis court jurisdiction to consider it.
At tbe close of tbe last century tbe United States bad two remedies open to them for tbe settlement of tbeir claims arising from injury to citizens through illegal condemnation, within Spanish territory and jurisdiction, by French authority, of tbeir merchant vessels. One was against France, which committed tbe act; tbe other was against Spain, which had permitted the act within her ports. The United States elected to secure indemnity from Spain, and through the provisions of the treaty of 1819 these claims passed out of the forum of diplomatic negotiation and this country lost any rights it might have before had against France. By the treaty of 1819 the United States agreed to pay the claims of their citizens defined in its ninth article and soon provided a tribunal to adjudicate them.
The act by virtue of which we exercise jurisdiction over these spoliation cases describes them as valid claims to indemnity upon the French Government, arising out of illegal captures, etc., prior to the ratification of the treaty of 1800, and excludes from our consideration such “ claims growing out of the acts of France as were allowed and paid, in whole or in part, under the provisions of the treaty between the United States and Spain concluded on the 22d day of February, 1819.”
This claim was not allowed nor paid in whole or in part, but it was presented for payment to a tribunal having jurisdiction to consider it, and was decided upon the merits adversely to the plaintiff. The peculiar phraseology of the proviso which excludes from our jurisdiction claims “ embraced” in one treaty, “claims allowed and paid in whole or in part” under another treaty, and claims “allowed in whole or in part7’ under a third treaty, shows that Congress had in view certain claims which were “embraced” in these last two treaties, and from this class separated and threw out of our jurisdiction, in the one case claims which had not only been “allowed,” but also “paid in whole or in part;” and, in the other case, claims which simply had been “ allowed in whole or in part,” whether paid or not.
A class of claims was then contemplated (which was “ embraced” in the treaty of 1819, which had not been “allowed or *129 paid in whole or in part,” and which is to be considered by this court.
To glean jurisdiction from a proviso in a statute, of a case already heard by a competent tribunal and decided upon the merits requires very clear and unequivocal language. Such jurisdiction can not be inferred, as every presumption is against such an inference. Many claims were rejected by the commissioners under the treaty of 1819 for reasons not going to the merits. Such claims may well have been u embraced” in the treaty, while not allowed. They are not res judicata according to any principle of law, and Congress intended to permit us to consider upon the merits such claims as were not decided upon the merits by the Spanish claims commissioners. This theory gives reasonable and sufficient force and effect to the proviso, which wé deem did not revive a cause already heard and decided upon its merits by a competent tribunal.