WeldoN, J.,
delivered the opinion of the court:
The findings show that the ship Star, John Burchmore, master, sailed on a commercial voyage from Salem, Mass., on the 23d day of September, 1799, bound for Trinidad and the *390 Spanish main; that upon her arrival at Trinidad a part of her cargo was sold, and the ship, with the rest of the cargo, sailed on the 7th of November, 1799, to Cumana, a Spanish port; that while pursuing her voyage she was captured by a French privateer and carried into the port of Cumana. On the 16th day of December, 1799, the Star, with her cargo, was condemned by the tribunal of commerce and prizes sitting at Basse Terre, in the island of Guadeloupe. Under that decree the ship and cargo were sold in the port of Cumana, and they became because of such proceedings a total loss to the owner. The grounds of the decree appear in the findings, and have been held by many decisions of the court as insufficient grounds of condemnation.
Whatever proceedings took place within the dominion of Spain were founded on the decree rendered within the jurisdiction of France, and they simply amounted to the execution of an illegal decree within the jurisdiction of the authority of Spain.
The claim embraced in this proceeding was not presented to Spain under the treaty of 1819, for the reason, as it is said, that the claim does not come within the treaty of 1819. The second clause of the ninth article of said treaty provides as follows: “To all claims on account of prizes made by French privateers and condemned by French consuls within the territory and jurisdiction of Spain.” (Public Treaties of the United States, 1873, p. 715.) Bj^ the treatjr there was a renunciation of all demands upon the part of the United States against Spain for any and all claims growing out of the acts of France in the condemnation of American property within the jurisdiction of Spain, and for such renunciation, and other considerations, Spain agreed to pay in the aggregate the sum of $5,000,000, which was to be in full of all claims coming within the classification recognized by the terms of the treaty. In whatever was done by Spain in the permission of the unlawful condemnation of American property within the Spanish dominion, Spain became a tort feasor with France, and, by the treaty of 1819, agreed to compensate the injured parties as aforesaid. No other acts upon the part of Spain than the permission of proceedings in condemnation come within the purview and scope of the treaty; and *391 whatever wrongs might otherwise have ensued to the rights of the American citizen within Spanish jurisdiction, he was without remedy and redress under the treaty of 1819.
It is insisted, upon the part of. the defendants, that more than two-thirds of the proceedings which resulted in the confiscation of the decedent’s property took place within the jurisdiction and dominion of Spain, and that the proceedings at Basse Terre were proceedings on paper, while at Cumana the wrongdoers were dealing with the res in the presence of an American consul, to whom no protest was made by the owners of the ship and cargo. There is no doubt, that in fact 'and in law, the Spanish authorities were very derelict in their duty toward the American owner in permitting the consummation of an illegal decree; but it does not follow that the owner had, by the terms of the treaty of 1819, a jurisdiction within which to redress his wrong. The transaction permitted by the Spanish authorities was wanting in the necéssary element of an illegal judicial proceeding within the territory of Spain, upon which the tortious sale was made.
It is insisted bjr the defendants that as early as 1802 claims of this character were insisted upon against Spain. That may be true; but when the United States and Spain met in convention and adopted the treaty of 1819 they eliminated from the liability of Spain all claims except such as grew out of the specified class enumerated in the second clause of the ninth article of the treaty. While the. circumstances of the proceedings at the port of Cumana, under the decree of the prize court at Basse Terre, show a very responsible participation of the Spanish authorities in the consummation of the wrong against the property of an American citizen, thejr do not bring the transaction within the letter or spirit of that clause of the treaty which measures and determines the responsibility of Spain. The treaty of 1819 not having, therefore, provided for the compensation of the injured parties they are remitted to the treaty of 1800 with France as a source of remuneration and indemnity.
In a communication bearing date February 26, 1805, by Messrs. Monroe and Pinckney, the accredited commissioners of the United States, to the first Secretary of State of the *392 Spanish Government, it is said,-on the subject of the treaty of the 30th of September, 1800:
“ It has never been contended by Spain that the spoliations which were committed by her own people were satisfied by that convention. Hence it is clear that Spain was not discharged from the claim of the United States for French spoli-ations committed within her limits by the second article of the convention of 1800. It is equally clear that she was not discharged by the first and second articles of the convention of 1803. It is evident, on a slight view of these last articles, and indeed of the whole instrument, that they had no other debts in contemplation but those which were made recoverable by the convention of 1800; that, in truth, the convention of 1803 did no more than provide funds for the payment of the debts that were due under that of 1800. * * *
“We have thus fully answered the arguments urged by your excellency against the claim of the United States on Spain to an indemnity for the spoliations on their commerce by the cruisers and tribunals of France, within the Territory of Spain, in the course of the last war, and, we are pursuaded, shown in the clearest manner that that claim is well founded.” (Am. St. Papers, Yol. II, 646, 649.)
It will be seen that at that early date in the negotiations between the parties as to the subject-matter of the treaty of 1819 the United States had in view the responsibility of Spain for what was substantially reduced to an agreement by the treaty of 1819 in the clause of the article quoted.
It has been held by the court in the case of the ship Hope that “a condemnation by the French tribunal of provisional captures, sitting in San Domingo, was a condemnation by a French consul within the territory and jurisdiction of Spain within the intent of the Spanish treaty of 1819,” and a claim founded thereon was within the jurisdiction of the Spanish commission. (27 C. Cls. R., 122.)
The claim in this proceeding is not embraced in the convention between the United States and the French Republic concluded on the 30th of April, 1803, nor within the provisions of the treaty with Spain concluded on the 22d of February, 1819, nor within the treaty between the United States and France concluded on the 4th day of July, 1831, and therefore falls within the first clause of the first Section of the act giving this court jurisdiction of the subject-matter of French spolia-tions growing out of captures, detentions, seizures, condemnations, and confiscations prior to the 30th of September, 1800.
*393 In tbe oral argument and the original brief tbe question was raised as to tbe sufficiency and competency of tbe proof to establish such facts as would show a liability against tbe United States. We have considered such objections most carefully, and have determined from tbe evidence such a finding of fact as in tbe opinion of the court entitles tbe claimant to tbe conclusion of law that tbe seizure and condemnation were illegal; that tbe claim was relinquished to France by tbe Government of tbe United States by the treaty of September 30, 1800, in consideration of tbe relinquishment of certain national claims of France against tbe United States, and that the claimant is entitled to tbe sum indicated in tbe conclusion of law.